**MILLIMAN, INC., et al., Plaintiff(s)**

v.

**HEALTH MEDICARE ULTRA, INC., et al., Defendant(s).**

**Civil No. 08–2162 (JAG).**

United States District Court,
D. Puerto Rico.

June 15, 2009.

114

Juan A. Marques–Diaz, McConnell
Valdes, San Juan, PR, PHV Joseph W.
Voiland, PHV R. Timothy Muth, Reinhart
Boerner Van Deuren s.c., Milwaukee, WI,
for Plaintiff.

Alberto O. Jimenez–Santiago, Magaly
Rodriguez–Quinones, San Juan, PR, for
Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Petitioners Milliman, Inc. ("Milliman")
and Tracy Aumiller (collectively "Petition-

ers") bring the present action against Health Care Ultra, Inc. ("HMU"), Juan Caparrós, and Marisol González (collectively "Respondents") requesting that this court issue a declaratory judgment compelling Respondents to enter arbitration under section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. For the reasons set forth below, the Court grants Petitioners' request to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

In January of 2007, HMU contracted with Milliman to perform consulting work in anticipation of bidding for a certain Medicare contract. In February of 2007, Milliman sent HMU a letter of agreement. (Docket No. 11, at 2, ¶ 8). Respondents argue that the timing of the agreement, some two weeks prior to the bidding deadline, contained unconscionable terms, which they were forced into signing because Milliman's services could not be replaced within this small time frame. (Docket No. 11, at 2–3, ¶¶ 8–9). HMU signed the letter agreement under which Milliman would perform certain actuarial services. (Docket No. 1, at 3, ¶ 8; Docket No. 29, at 2, ¶ 5). The agreement contained an arbitration clause whereby in the event of any dispute arising out of the contract, the parties would submit themselves to arbitration under the American Arbitration Association ("AAA"). (Docket No. 29, at 2–3, ¶ 6).

The initial plans called for Milliman' final actuary certification to be provided to HMU by May 23, 2007 (Docket No. 1–3, Ex. B, at 7, ¶ 3). This, however, was not done until June 20, 2007, over two weeks after the proposal deadline. (*Id.* at 10, ¶¶ 16–17). HMU was not granted a filing

extension and lost the Medicare contract bid. (*Id.* at 11, ¶ 18).

In January of 2008, counsel for Petitioners received an e-mail from HMU's counsel. (Docket No. 1, at 3, ¶ 10). This e-mail contained a draft copy of a complaint. (*Id.* ¶ 10). The draft complaint listed damages totaling five million dollars. (Docket No. 1–3, Ex. B, at 12). After examining the draft complaint, Petitioners considered that there was a dispute arising out of the contract and on January 23, 2008, they initiated an arbitration proceeding with the AAA. (Docket No. 1, at 4, ¶ 11). On September 19, 2008, nearly nine (9) months after the arbitration proceeding commenced, Respondents filed a complaint in state court requesting a preliminary and permanent injunction to stay the arbitration before the AAA. Respondents also requested $5 million in damages as a result of Petitioners' alleged negligent or intentional failure to timely comply with the obligations agreed to in the contract. (Docket No. 1, at 4, ¶ 14; Exh. E).

On October 9, 2008, Petitioners moved this Court for a declaratory judgment compelling Respondents to continue the arbitration proceedings commenced with the AAA. (Docket No. 1). Petitioners filed their brief in support of their motion to compel arbitration on December 11, 2008. (Docket No. 30). Respondents filed their brief in opposition to the motion to compel arbitration on January 21, 2009. (Docket No. 37). On March 9, 2009, Petitioners' request was referred to a Magistrate Judge for a Report and Recommendation. Additionally, this Court requested the Magistrate Judge to address whether this case should be stayed or dismissed in order to avoid piecemeal litigation since there was a complaint pending before the state court.[1] (Docket Nos. 46 and 47).

1. On November 6, 2008, this Court ordered the parties to brief this Court why the case at

bar should not be stayed in order to avoid piecemeal litigation. (Docket No. 6). The

On May 8, 2009, the Magistrate Judge issued his Report and Recommendation. The Magistrate recommended against granting Petitioners' request for a declaratory judgment. Specifically, the Magistrate Judge found that Petitioners failed to show that the dispute before the AAA was due to any injury, actual or threatened. According to the Magistrate Judge, Petitioners moved to arbitration because of the draft complaint sent to them by HMU's counsel. The Magistrate Judge concluded that Petitioners could not compel arbitration on as of yet unfiled claims by Respondents as they did not present an actual case or controversy. Accordingly, the Magistrate Judge recommended that this Court deny Petitioners' request to compel arbitration because the dispute before the AAA was not ripe.

The Magistrate Judge, nonetheless, concluded that if this Court found that ripeness was not an issue in the case at bar, all the elements necessary to grant a motion to compel arbitration were present because there exists a written agreement to arbitrate; the dispute between Petitioners and Respondents falls within the scope of that arbitration agreement; and Petitioners have not waived their right to arbitration. The Magistrate Judge also noted that Respondents demanded that a jury hear this case on the question of unconscionability. Nonetheless, the Magistrate Judge determined that since Respondents bound themselves to the terms of the arbitration provision, they had waived their right to a jury trial on the unconscionability issue. Finally, the Magistrate Judge found that the present case should not be stayed or dismissed in order to avoid piecemeal litigation. (Docket No. 52).

On May 26, 2009, Petitioners objected to the Magistrate Judge's Report and Recommendation. Petitioners' objected to the Magistrate Judge's conclusion that their request to compel arbitration should be denied for lack of ripeness. (Docket No. 53). Respondents also objected to the Report and Recommendation. They agreed with the Magistrate Judge's recommendation that the present case should be dismissed because of ripeness. Specifically, Respondents stressed that the claim before the AAA is not ripe because they have not yet decided whether to pursue a claim against Petitioners. Respondents aver that they sent Petitioners a draft of a complaint as "a good faith effort to engage in a non-judicial attempt to obtain compensatory remedy through negotiations, and not in a pre litigation process." Furthermore, Respondents argued that since the present case is not ripe, it is inappropriate for this Court to adopt the Magistrate Judge's finding that there is a valid arbitration agreement between the parties. (Docket Nos. 54 and 55). On June 12, 2009, Petitioners opposed Respondents' objections. (Docket No. 56).

## STANDARD OF REVIEW

1) *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

Pursuant to 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'with-

parties complied with the order and briefed the Court as to their position regarding this

matter. (Docket Nos. 17, 19, 20 and 24).

in ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan,* 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.,* 283 F.Supp.2d 550, 555 (D.P.R.2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected parties fail to timely file objections, "the district court can assume that they have agreed to the magistrate's recommendation." *Alamo Rodriguez,* 286 F.Supp.2d at 146 (citing *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985)).

## DISCUSSION

This Court notes that Respondents did not specifically object to the Magistrate Judge's finding that all the elements necessary to compel arbitration are present because there exists a written agreement to arbitrate; the dispute between Petitioners and Respondents falls within the scope of that arbitration agreement; and Petitioners have not waived their right to arbitration. Respondents only argued that this Court should not adopt this finding because the case is not ripe. Thus Re-

spondents have waived their right to review the Magistrate Judge's determination that in the present case all the elements necessary to compel arbitration are present. *Santiago v. Canon U.S.A.,* 138 F.3d 1, 4 (1st Cir.1998) (finding that a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court).[2] Accordingly, if this Court finds that ripeness is not a bar to Petitioners' request for declaratory judgment, this Court will issue an order compelling arbitration as we agree with the Magistrate Judge's conclusion that the elements necessary to compel arbitration are present in the case at bar. *See, e.g., Combined Energies v. CCI, Inc.,* 514 F.3d 168, 171 (1st Cir.2008) (noting that "[w]hen deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration' "). Hence this Court must address whether Petitioners' request for declaratory judgment is ripe.[3]

This Court's jurisdiction extends only to "cases" and "controversies," as authorized by Article III, Section 2, of the United States Constitution. *D.H.L. Assocs. v. O'Gorman,* 199 F.3d 50, 53 (1st Cir.1999). This means that issues before

---

**2.** Respondents should note that the Court will not entertain any arguments that were not timely presented in their objections.

**3.** In the Report and Recommendation, the Magistrate Judge stated that if the Court found Petitioners to have standing to seek a declaratory judgment, arbitration should be compelled. However, the Magistrate Judge reasoned that Petitioners' request for a declaratory judgment should be denied for lack of ripeness and not standing. There is unquestionably some overlap between ripeness and standing. *Warth v. Seldin,* 422 U.S. 490,

499 n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (noting that the standing question "bears close affinity to questions of ripeness— whether the harm asserted has matured sufficiently to warrant judicial intervention"). Standing, however, asks "who" may bring a claim, ripeness concerns "when" a claim may be brought. *Nulankeyutmonen Nkihtaqmikon v. Impson,* 503 F.3d 18, 32 (1st Cir.2007) (internal citation omitted). Since the Magistrate Judge's analysis focuses on ripeness and not standing, our analysis will also focus on ripeness.

us must be ripe and reflect a live dispute between adverse parties. *Id.* The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). The ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In determining ripeness, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[4] *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (internal citation omitted); *see also Gun Owners' Action League v. Swift,* 284 F.3d 198, 206 (1st Cir.2002). Determining whether a claim is ripe involves evaluating "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. Hence determining ripeness involves a dual inquiry as to be ripe for review, claims must satisfy both the fitness and the hardship components. *McInnis–Misenor v. Me. Med. Ctr.,* 319 F.3d 63, 70 (1st Cir.2003). The fitness component requires us to consider the likelihood that the harm alleged by the party will ever come to pass. *Id.* This involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed. *Ernst & Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 535 (1st Cir.1995). Accordingly, "the critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Ernst & Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 536 (1st Cir.1995) (internal citation omitted). The hardship component evaluates "the extent to which withholding judgment will impose hardship—an inquiry that typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." *McInnis–Misenor,* 319 F.3d at 70. "The greater the hardship, the more likely a court will be to find ripeness." *Id.*

Here, Petitioners have alleged a concrete injury that they are being deprived of their contractual right to arbitrate and that the injury is caused by Respondents' refusal to arbitrate. Specifically, Petitioners allege that a controversy with Respondents developed and that in accordance with the arbitration agreement, they commenced an arbitration before the AAA. Petitioners further aver that Respondents refused to arbitrate and instead filed a state court suit to enjoin them from continuing the arbitration. The state court suit also includes a $5 million damage claim for Petitioners' alleged non compliance with the terms of the agreement.

■ We find that the fitness component favors judicial review because the filing of a state court suit by Respondents seeking to enjoin Petitioners from continuing the arbitration before the AAA creates in this

---

4. Generally, to meet the jurisdictional requirements of Article III's "case" or "controversy" requirement, "a plaintiff must demonstrate that he has suffered injury in fact, 'that is fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

case a substantial controversy of sufficient immediacy and reality as said act by Respondents goes against the arbitration agreement. Allowing more time for development of events would not advance our ability to deal with the issues presented for resolution since the alleged injury is not contingent on events that may or may not happen. *See Doe v. Bush*, 323 F.3d 133, 139 (1st Cir.2003) (noting that the baseline question in the fitness inquiry is whether allowing more time for development of events would significantly advance the court's ability to deal with the legal issues presented or aid the court in their resolution) (internal citations omitted). Likewise, the hardship component favors judicial review. This Court holds that withholding judicial review would subject Petitioners to great hardship as they would be unable to continue to solve their dispute with Respondents through the current arbitration procedure. Instead, Petitioners would be subject to a state court suit which includes a $5 million damage claim stemming from Petitioners' alleged non compliance with the terms of the agreement.[5] Hence Petitioners' request for declaratory judgment is ripe.

We disagree with the Magistrate Judge's finding that the lack of ripeness of the actual dispute that Petitioners brought to arbitration before the AAA precludes this Court from entering an order compelling arbitration. Whether the alleged dispute that led Petitioners to commence arbitration proceedings before the AAA is ripe must ultimately be determined by the arbitrator. *Albritton v. W.S. Badcock Corp.*, Nos. 1:02–CV378–D–D, 1:02–CV379–D–D, 2003 WL 21018636, at *4 (N.D.Miss. Apr.7, 2003) (rejecting argu-

ment that motion to compel arbitration was not ripe because "[t]he Supreme Court ... has recently held that procedural questions such as ripeness are for an arbitrator, not for the court, to decide") (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)); *see also Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 210 (S.D.Tex.2008); *Pioneer Navigation Ltd. v. Maritime Enters., Inc.*, No. 95–1054, 1995 WL 517137, *1, 1995 U.S. Dist. LEXIS 12739, at *2 (E.D.La. Aug. 30, 1995) (concluding that because the parties included a broad arbitration clause in their contract, the court's role was limited to staying the litigation and allowing the arbitrators to resolve all issues under the contract, including the issue of ripeness of an issue for arbitration).

In sum, we find that there is a substantial controversy, between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Whether the controversy that led Petitioners to commence arbitration before the AAA is not ripe is something for the arbitrator to decide and, therefore, is not a bar for this Court to compel arbitration. In the present case, all the elements necessary to compel arbitration are present since there exists a written agreement to arbitrate; the dispute between Petitioners and Respondents falls within the scope of that arbitration agreement; and Petitioners have not waived their right to arbitration. Accordingly, the parties are ordered to return to arbitration before the AAA.

## CONCLUSION

For the reasons state above, this Court **ADOPTS** in part and **REJECTS** in part

---

**5.** This Court recognizes that Respondents informed this Court that if Petitioners' declaratory judgment claim was dismissed they would voluntarily dismiss their state court

suit. However, as the case currently stands, Petitioners are facing a state court suit if arbitration is not compelled.

the Magistrate Judge's Report and Recommendation. (Docket No. 52). This Court **GRANTS** Petitioners' request to compel arbitration. The parties in the case at bar are hereby ordered to continue the arbitration process commenced with the AAA. Judgment shall be entered accordingly.

IT IS SO ORDERED.